IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ERIK GARCIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| vs. | ) | |
| | ) | FILE No. |
| BUILDING ON ELM STREET CORP., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW, ERIK GARCIA, by and through the undersigned counsel, and files this, his Complaint against Defendant, BUILDING ON ELM STREET CORP., pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"). In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1.     This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendant's failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2.     Plaintiff ERIK GARCIA (hereinafter "Plaintiff") is, and has been at all times relevant to the instant matter, a natural person residing in Houston, Texas (Harris County).

3.     Plaintiff is disabled as defined by the ADA.

4.     Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking, standing,

1

grabbing, grasping and/or pinching.

5.     Plaintiff uses a wheelchair for mobility purposes.

6.     Plaintiff is also an independent advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA.  His motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to create the requisite standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property, including returning to the Property as soon as it is accessible ("Advocacy Purposes").

7.     Defendant, BUILDING ON ELM STREET CORP. (hereinafter "BUILDING ON ELM STREET CORP."), is a California corporation that transacts business in the State of Texas and within this judicial district.

8.     Defendant, BUILDING ON ELM STREET CORP., may be properly served with process via its registered agent for service, to wit:   Ramsey Bookkeeping & Tax Service, 3021 S. 7th Street, Abilene, TX  79604.

## FACTUAL ALLEGATIONS

9.     On or about June 22,2019, Plaintiff was a customer at "Aqua Botanical and Zoological" a business located at 391 El Dorado Blvd, B, Webster, TX  77598, referenced herein as "Aqua Zoo".

10.     BUILDING ON ELM STREET CORP. is the owner or co-owner of the real property and improvements that Aqua Zoo is situated upon and that is the subject of this action, referenced herein as the "Property."

11.     Plaintiff lives 2 miles from Aqua Zoo and the Property.

12.     As a nearby resident, Plaintiff frequently passes by the Property on his way to the near-by highway.

13.     Also, Plaintiff is a big fan of fantasy and science fiction games such as Magic Cards and Dungeons and Dragons, as such he has visited the store at the Property known as Gerard's Gaming six or seven times in the recent past.  Plaintiff continues to enjoy that hobby and shall return to Gerard's Gaming in the near future as soon as the barriers to access present at the Property are removed.

14.     On each such visit, Plaintiff endured exposure to the dangerous conditions and ADA violations at the Property.

15.     Plaintiff's access to the business(es) located at 391 El Dorado Blvd, B, Webster, TX   77598, Harris County Property Appraiser's account number 0450980000020 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and he will be denied and/or limited in the future unless and until Defendant, BUILDING ON ELM STREET CORP., is compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

16.     Plaintiff has visited the Property at least seven times before as a customer and advocate for the disabled.  Plaintiff intends on revisiting the Property within six months or sooner, as soon as the barriers to access detailed in this Complaint are removed and the Property is accessible again.  The purpose of the revisit is to be a regular customer, to determine if and when the Property is made accessible and to maintain standing for this lawsuit for Advocacy

Purposes.

17.     Plaintiff intends on revisiting the Property to purchase goods and/or services as a regular customer living in the near vicinity as well as for Advocacy Purposes, but does not intend to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access.

18.     Plaintiff travelled to the Property as a customer and as an independent advocate for the disabled, encountered the barriers to access at the Property that are detailed in this Complaint, engaged those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access present at the Property.

<u>**COUNT I**</u>
<u>**VIOLATIONS OF THE ADA AND ADAAG**</u>

19.     On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq.*

20.     Congress found, among other things, that:

(i)     some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii)    historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)   discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)    individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers,

4

overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)     the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

21.     Congress explicitly stated that the purpose of the ADA was to:

(i)     provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)    provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

        * * * * *

(iv)    invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

22.      The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

23.     The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

24.     The Property is a public accommodation and service establishment.

25.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to

5

implement the requirements of the ADA. 28 C.F.R. Part 36.

26.     Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq.*; 28 C.F.R. § 36.508(a).

27.     The Property must be, but is not, in compliance with the ADA and ADAAG.

28.     Plaintiff has attempted to, and has to the extent possible, accessed the Property in his capacity as a customer of the Property as well as an independent advocate for the disabled, but could not fully do so because of his disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

29.     Plaintiff intends to visit the Property again in the very near future as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

30.     Defendant, BUILDING ON ELM STREET CORP., has discriminated against Plaintiff (and others with disabilities) by denying his access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as

prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

31.     Defendant, BUILDING ON ELM STREET CORP., will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant, BUILDING ON ELM STREET CORP., is compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

32.     A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed, or was made aware of prior to the filing of this Complaint, that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

(i)     Near Unit 307, the access aisle is not wide enough and is in violation of Section 502.3.1 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(ii)    Near Unit 307, the ground surfaces of the access aisle have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Section 302, 303 and 502.4 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to access the units of the Property.

(iii)   Near Unit 307, the Property has an accessible ramp leading from the accessible parking space to the accessible entrances with a slope exceeding 1:12 in violation

of Section 405.2 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to access the units of the Property.

(iv)    Near Unit 349, the accessible parking space and associated access aisle have a surface slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and are not level. This violation made it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(v)     Near Unit 349, the access aisle to the accessible parking space is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(vi)    Near Unit 349, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking space in violation of section 406.5 of the 2010 ADAAG Standards.  This violation made it difficult and dangerous for Plaintiff to exit/enter their vehicle.

(vii)   There are changes in level in the Property exceeding ½ (one-half) inch that are not accessible ramped in violation of Section 303.4 of the 2010 ADAAG standards. Specifically, near Unit 349, there is an approximately 1-2 inch vertical rise at the accessible ramp leading to the entrance, thus rendering the interior of the Property, at best, dangerously accessible, at worst, totally inaccessible. This violation made it dangerous and difficult for Plaintiff to access the units of the Property.

(viii)  Near Unit 349, the Property has an accessible ramp leading from the accessible parking space to the accessible entrances with a slope exceeding 1:12 in violation

of Section 405.2 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to access the units of the Property.

(ix)     Near Unit 349, one of the accessible parking spaces is missing a proper identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This violation made it difficult for Plaintiff to locate an accessible parking space.

(x)      Near Unit 349, due to the excessive vertical rise at the accessible ramp making it inaccessible, which is located adjacent to the accessible parking spaces present at that location, the accessible parking spaces are not located on an accessible route in violation of section 208.3.1 of the 2010 ADAAG standards. There are no other nearby accessible ramps serving these accessible parking spaces.  This violation made it difficult for Plaintiff to access the units of the Property.

(xi)     Near Unit 391B, the accessible parking space is missing a proper identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This violation made it difficult for Plaintiff to locate an accessible parking space.

(xii)    Near Unit 391B, the accessible parking space is not adequately marked, due to a failure to maintain it, and is in violation of Section 502.1 of the 2010 ADAAG standards. This violation made it difficult for Plaintiff to locate an accessible parking space.

(xiii)   Near Unit 391B, due to the orientation of the accessible ramp causing the entryway of the ramp to be perpendicular to the access aisle of the adjacent accessible parking space and the fact that the accessible route leading to the accessible ramp will be blocked by a parked vehicle in an adjacent parcel which Defendant has no control (based on the parking lot striping of the adjacent parcel'

parking lot), the adjacent accessible parking space to the ramp is not located on an accessible route in violation of section 208.3.1 of the 2010 ADAAG standards, due to the likelihood the accessible route will be blocked by a parked car in the adjacent parking lot.  This violation made it difficult for Plaintiff to access the units of the Property.

(xiv)   Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

33.     The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

34.     Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

35.     The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

36.      All of the violations alleged herein are readily achievable to modify to the Property into compliance with the ADA.

37.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

38.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendant, BUILDING ON ELM STREET CORP., has the financial resources to make the necessary modifications.

39.     Upon information and good faith belief, the Property have been altered since 2010.

40.     In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

41.     Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant, BUILDING ON ELM STREET CORP., is required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

42.     Plaintiff's requested relief serves the public interest.

43.     The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendant, BUILDING ON ELM STREET CORP.

44.     Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendant, BUILDING ON ELM STREET CORP., pursuant to 42 U.S.C. §§ 12188 and 12205.

45.     Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendant, BUILDING ON ELM STREET CORP., to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)     That the Court find Defendant, BUILDING ON ELM STREET CORP., in violation of the ADA and ADAAG;

(b)     That the Court issue a permanent injunction enjoining Defendant, BUILDING ON ELM STREET CORP., from continuing their discriminatory practices;

11

(c)    That the Court issue an Order requiring Defendant, BUILDING ON ELM STREET CORP., to (i) remove the physical barriers to access and (ii) alter the subject the Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d)    That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses and costs; and

(e)    That the Court grant such further relief as deemed just and equitable in light of the circumstances.

Dated: August 12, 2019.

Respectfully submitted,

/s/ Douglas S. Schapiro
Douglas S. Schapiro, Esq.
*Attorney-in-Charge for Plaintiff*
Southern District of Texas ID No. 3182479
The Schapiro Law Group, P.L
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com

12